# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| ROBERT LEE and )<br>LEE'S LOUNGE, INC, )<br>  )<br>  Plaintiffs, )<br>  )<br>v. )<br>  )<br>CITY OF MARION, ALABAMA, )<br>  )<br>  Defendant. ) | CIVIL ACTION NO. 2:09-0301-KD-N |

## ORDER

This action is before the Court on plaintiffs Robert Lee and Lee's Lounge, Inc.'s (Lee's) petition for declaratory relief. Lee's petition results from the defendant City of Marion's (the City's) decision not to approve Lee's application for a Class I Lounge Retail Liquor License for the property located at 106 West Jefferson Street, Marion, Alabama. Lee's claims that the City violated the laws of the State of Alabama because it acted in an arbitrary and capricious manner and that the City violated Lee's constitutional right to due process were resolved on summary judgment. The remaining claim, that the City violated Lee's right to Equal Protection under the U.S. Constitution and the Constitution for the State of Alabama, was tried without a jury on July 21, 2010.

Upon consideration of the evidence presented at trial, both documentary and testimonial, and all other pertinent portions of the record, the Court makes the following findings of fact and conclusions of law.

I. Findings of Fact

Historically, the property at 106 West Jefferson Street, Marion, Alabama, has been used as a lounge and café. (Testimony of plaintiff Robert Lee; testimony of witness Reese Billingslea;

testimony of Mayor Anthony Long, representative for the City).

On April 19, 2004, the City Council approved a Class I Lounge Retail Liquor License for Mamie Booker, doing business as Paradise Lounge at 106 West Jefferson Street, with the stipulation that the lounge could not open until the building on the property was brought into compliance with the requirements of the State Fire Marshal's Office. (Lee's Exh. 1, Minutes, p. 38). Councilmembers Corin Harrison and Twynette Yeager[1] voted against approval. (Id.).

The minutes reflect as follows:

> Mayor pro tem Hogue stated that he had an item for the Council consideration that was not on the agenda. The item was the consideration of Lounge Retail Liquor License for Mamie Booker d/b/a Paradise Lounge on Jefferson Street. A discussion ensued. Councilmember Yeager felt that it was against Council Procedure to take action on an item that was not an "agenda item". Councilmember Harrison opposed the consideration due to the fact that the State Fire Marshal's Office has cited the owner of the building and that correction actions had to be taken to include a registered architect drawing of floor and seating plans. Councilmember Hollis moved that approval be given on the Lounge Retail Liquor License with the stipulation that the establishment can not be open until all paper work is competed and the services of a registered architect is obtained. Councilmember Jackson seconded the motion. On a vote of the Council, the results were as follows: Yea" Councilmembers Hollis, Hogue and Jackson. Nay: Councilmembers Yeager and Harrison. The Presiding Officer declared the motion carried by a majority vote. Councilmember Harrison asked that the minute reflect "the action of Council was illegal and can be overturned because action should not have been taken without the City Attorney being present to give a legal opinion on Section 34-2-32 (registered architect's services required) of the Code of Alabama.

(City's Exh. 1, p. 38).

Normally, the Council did not address items which were not on the agenda unless the Council voted unanimously to add the item. (Harrison's testimony).

---

[1] Yeager was not a member of the City Council at the time of the vote regarding Lee's application for 106 West Jefferson Street.

During the time of operation of Paradise Lounge, the City received numerous complaints about litter, trash, loud music, noise, vulgar language, fighting and arguing among people outside the lounge, traffic congestion, and vehicles blocking the street. (Long's testimony, Harrison's testimony, testimony of Councilmember Brandon Taylor). In response to citizen complaints and Councilmember Taylor's own complaint of noise at his house two blocks away, Mayor Long and Councilmember Taylor on one occasion went to the lounge to help disperse a crowd and to ask the lounge manager to close the lounge for the evening. (Long's testimony, Taylor's testimony). Also, on or about January 1, 2005, members of law enforcement were injured when responding to a fight outside of the lounge. (Long's testimony; Exh. 1, Minutes, p. 64).[2] The lounge closed in early 2005. (Long's testimony, Harrison's testimony).[3]

---

[2] The minutes of the January 3, 2005, council meeting reflect as follows:

> Councilmember Hollis requested that the manager of the Paradise Lounge report to the Council on the incident that had occurred at and/or in front of the lounge the late hours of December 31st or the early hours of January 1st. Mr. Danny Anderson came before the Council and stated that the fight occurred outside of the lounge and that the problem was not inside. Mr. Anderson complained about the response time of the Marion Police Department. Mayor Long['s] reply was that a couple of patrolmen and/or auxiliary officers were injured in the incident and that the governing body was not going to tolerate such behavior and that the body was in support of its department. Mrs. Mary B. Webb Wallace, owner of the building that houses the lounge, also addressed the Council.
> Councilmember Taylor asked the group to be cognizant of the litter problem and to ... help the city employees by picking up litter on their streets.

(City's Exh. 1, Minutes, p. 64). The Council then went into executive session on the basis that an individual's character or good name would be discussed. (Id.).

[3] Mayor Long testified that Danny Anderson managed the Paradise Lounge. The Mayor also testified that at the January 3, 2005 council meeting, the City warned Mr. Anderson that continued problems might result in revocation of Mamie Booker's lounge license. Mayor Long also testified that a motion to revoke the license was never brought before the City Council

3

On December 3, 2007, Jeffery Tubbs appeared before the City for approval of an application for a Class I Lounge Retail Liquor License for 106 West Jefferson Street. (City's Exh.1, Minutes, p. 104). Councilmember Taylor and Mayor Long voted against approval. Two councilmembers voted in favor and one abstained. The Application was not approved. (Id.) Mayor Long voted against approval because of past problems at that location including the parking and traffic problems while Booker held a license. (Long's testimony).[4] Councilmember Taylor voted against approval because of litter, trash, noise, constituent complaints personally to him, his own experience with the noise from the lounge reaching his home two blocks away, proximity to churches, as well as parking and traffic problems. (Taylor's testimony).

The minutes reflect as follows:

> An application for a Retail Lounge Liquor License for Jeffrey Tubbs for 106 West Jefferson formerly the Paradise Lounge came before the Council for its consideration. Councilmember Hollis moved that approval be given for a Retail Lounge Liquor License for Mr. Tubbs at 106 West Jefferson Street formerly Paradise Lounge. On a roll call vote the results were as follows: Yea. Councilmembers Hollis and Jackson. Nay: Councilmember Taylor and Mayor Long. Abstain: Councilmember Hogue. The Presiding Officer declared the motion failed (did not pass).

(City's Exh. 1, p. 104).

On August 20, 2007, Lee came before the City Council to request approval of a Class 1 Lounge Retail Liquor License for 108 Green Street. (City's Exh. 1, Minutes, p. 87). His application was not approved at that time. (Id.). Instead, the City Council voted unanimously to consider this as a first reading of Lee's application with final consideration to be given at the

---

because the lounge closed (Long's trial testimony).

[4] The minutes indicate that Councilmember Harrison was not present.

next regular session. (Id.). At this meeting, Mayor Long explained that another business on Green Street, the Steakhouse, had been approved for Restaurant Retail Liquor License with restrictions. (City's Exh. 1, Minutes, p. 87). Also at the meeting, Councilmember Harrison discussed with Lee, that there would not be a problem with obtaining a restaurant license for the Green Street location. (Harrison's testimony).

Lee testified that after this meeting, he had conversations with the Mayor, Councilmember Spencer Hogue, and Councilmember Jackson[5] who encouraged Lee to open a lounge at 106 West Jefferson Street and indicated there would be no opposition since a lounge had been there in the past. (Lee's testimony; City's Exh. 1, Minutes, p. 87). Mayor Long disputes that he encouraged Lee to open a lounge at the location. (Long's testimony). Mayor Long admits telling Lee that a restaurant liquor license would be a viable option for the Green Street location, but denies ever advising Lee to purchase the property at 106 West Jefferson Street for use as a lounge or that a lounge license would be approved for that location. (Id.). The Court finds Mayor Long's testimony to be more credible than Lee's testimony on this point.

Ultimately, after final consideration was postponed and Lee appearing twice more before the City, Lee withdrew his request for a license for the Green Street location. (City's Exh. 1, Minutes, p. 95).

In October 2008, Lee, doing business as Lee's Lounge, Inc., purchased the property at 106 West Jefferson Street, and made renovations for use as a lounge. (Lee's testimony; City's Exh. 3, copy of deed). Lee applied with the Alabama Alcoholic Beverage Control Board for a Class I Lounge Retail Liquor License to operate a lounge at 106 West Jefferson Street. (City's

---

[5] Hogue and Jackson did not testify at trial.

Exh. 3, copy of Alcohol License Application). On January 5, 2009, the City Council voted on Lee's request for approval of the License. (Lee's Exh. 11, Minutes, p. 112). Mayor Long and Councilmembers Harrison and Taylor voted against approval and Councilmembers Turner, Sanders and Jackson voted in favor. (Id.). The vote was a tie and the application was not approved. (City's Exh. 3, copy of the City's certification of results to the Alabama Alcoholic Beverage Control Board). The minutes reflect as follows:

> Mr. Robert Lee came before the Council to request Lounge Retail Liquor License for Robert E. Lee at 106 Jefferson Street. City Attorney Pettway asked Mr. Lee about parking for this location since 32 parking spaces is recommended. Mr. Lee stated that some of the parking would be on street since his time of operation would be different from the retailers. Councilmember Sander asked Mr. Lee if he would be willing to clean the area and be liable for any loud music and/or violence at this location. Councilmember Harrison stated that he could not vote for approval because of Mr. Lee's past history and the traffic congestion due to limited parking. Councilmember Jackson moved that approval be given for Lounge Retail Liquor License for Robert E. Lee at 106 Jefferson Street (formerly College City Lounge and Paradise [Lounge]). Councilmember Sanders seconded the motion. On a roll call vote the result was as follows: Yea: Councilmembers Turner, Sanders and Jackson. Nay: Councilmembers Taylor, Harrison and Mayor Long. The Presiding Officer declared a tie vote.

(Lee's Exh. 11, Minutes, p. 112).

The off-street and on-street parking spaces available for lounge patrons as well as for patrons of other establishments in the area of 106 West Jefferson Street has not changed since Booker's application was approved. (Trial testimony).

Mayor Long, Councilmember Harrison and Councilmember Taylor reached their decision on the basis of problems regarding parking and traffic congestion, as well as the problematic history of other lounges located at 106 West Jefferson Street, specifically litter, trash, loud music, late hours of operation, noise, vulgar language, violence including fighting and arguing among people outside the lounge, and injury to a police officer responding to a fight.

6

(Long, Harrison and Taylor's testimony). Councilmember Harrison's and Councilmember Taylor's votes were also consistent with their effort to amend the City's Zoning Ordinance to preclude operation of any lounge in the City's Central Business District (CBD). (Harrison and Taylor's testimony). No license for lounge has been approved for a location in the CBD since 2004 when Mayor Long took office. (Harrison and Long's testimony).

Councilmember Harrison explained that he voted not to approve the License because of Lee's past history at other locations which sold liquor. (Harrison's testimony). In regard to past history, Harrison explained that it was his understanding that at Lee's Lounge on Highway 5 there had been numerous fights, shootings and cuttings, and disturbances which tied up the police. (Id.). Harrison also explained that there had been complaints of drinking on premise at a convenience store owned by Lee which held only an off-premise beer license[6] and that Lee had been cited by the Alcohol Beverage Control Board. (Id.).[7]

Harrison also explained that his decision was not influenced by the past history of his personal relationship with Lee. (Id.) Lee worked for Harrison at his timber company in the mid 1980's, again in the 1990's, and was fired in approximately 1995. (Lee's testimony). During his employment, Lee was active in union organization and helped unionize the workers at Harrison's company. (Id.). Lee testified that when he was fired in the 1980's, he filed a grievance against

---

[6] Lee's Lounge, Inc., held an off-premise retail beer license doing business as Lee's Community Store. (Lee's Exh. 4).

[7] The parties do not dispute that Lee was cited by the ABC and paid a fine. In his application for the license for 106 West Jefferson Street, Lee included that he was cited by ABC Enforcement in January 2005 for possession of alcohol for sale without a license and that he plead guilty and paid a fine. (City's Exh. 3, p.2). The parties dispute whether the citation was criminal or civil. (Trial testimony).

Harrison which resulted in reinstatement. (Id.). Harrison disagrees that Lee was fired in the 1980's and disagrees as to the result of the union grievance filed by Lee. (Harrison's testimony).

Attempts to amend Zoning Ordinance

At the October 15, 2007, meeting, Councilmember Harrison introduced Ordinance 2007-10 to amend the Zoning Ordinance to prohibit bars, lounges or night clubs in the CBD and moved for a public hearing on the amendment. (Lee's Exh. 3, Minutes, p. 92). Councilmember Taylor seconded the motion, and the motion for a public hearing was carried unanimously. (Id.).

At the November 26, 2007 meeting, after public hearing, Councilmember Harrison moved that the Ordinance 2007-10 be approved and Councilmember Taylor seconded the motion. (City's Exh. 1, Minutes, un-numbered page). Councilmembers Harrison and Jackson and Mayor Long voted in favor of the amendment and Councilmember Jackson voted against the amendment. (Id.). The City Attorney informed the Council that an ordinance of general and permanent nature required a two-third majority vote, and thus the vote was not sufficient to pass the Ordinance. (Id.).

At the January 5, 2009 meeting, the Council again discussed the amendment. (Lee's Exh. 11, Minutes, p. 111). Ordinance No. 2009-2 was introduced and was considered for first reading. The Council voted to hold a public hearing on the proposed zoning amendment. (Id.). Ultimately, the amendment did not pass. (Taylor's testimony).

II. Conclusions of Law

After consideration of the pleadings, the evidence, the testimony of the witnesses, and the oral argument at trial, the Court makes the following conclusions of law:

Relevant statute

The City, a Class 8 Municipality, does not have an ordinance regulating the sale of liquor. Code of Alabama § 28-3A-11, titled, "Lounge retail liquor license; approval of municipality; entertainment; minors", applies to Class 8 municipalities and sets forth as follows:

> Upon applicant's compliance with the provisions of this chapter and the regulations made thereunder, the board shall, where the application is accompanied by a certificate from the clerk or proper officer setting out that the applicant has presented his application to the governing authority of the municipality, if the licensed premises is to be located therein, and has obtained its consent and approval, issue a retail liquor license . . .

Ala. Code § 28-3A-11. The statute requires only the consent and approval of the municipality and sets forth no criteria upon which the municipality should make its decision. (Id.).

Equal Protection

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law. The first inquiry in any § 1983 lawsuit ... is whether the plaintiff has been deprived of a right secured by the Constitution and laws." Holt v. Glenn, 2010 WL 117714 (11th Cir. January 14, 2010) (slip copy) (not selected for publication) (internal quotations and citations omitted).

Under the Constitution of the State of Alabama, an Equal Protection violation also requires that the plaintiff be treated differently than "others in like circumstances". Municipal Workmen's Comp. Fund, Inc. v. Jolly, 709 So.2d 1230, 1231-1232 (Ala. Civ. App. 1997) ("Sections 1, 6, and 22 of the Declaration of Rights combine to guarantee equal protection under the laws of Alabama. The guarantee of equal protection prohibits 'class legislation arbitrarily discriminatory against some and favoring others in like circumstances.' ") (quoting Moore v. Mobile Infirmary Association, 592 So.2d 156, 165 (Ala.1991) (quoting Opinion of the Justices,

252 Ala. 527, 530, 41 So.2d 775, 777 (1949)) (footnote omitted).

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Since Lee does not assert that he or Lee's Lounge, Inc. are members of a protected class, Lee's claim must be brought upon a "class of one" legal theory first acknowledged in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073 (2000) (per curiam). In order to succeed on a claim for an Equal Protection violation for a class-of-one, Lee must show that they have "been intentionally treated differently from others similarly situated" and that "there is no rational basis for the difference in treatment." Id. at 564. The "'similarly situated' requirement must be rigorously applied in the context of 'class of one' claims". Leib v. Hillsborough County Public Transp. Com'n, 558 F.3d 1301, 1306-1307 (11th Cir. 2009). Lee and any similarly situated applicants, i.e., comparators must be "*prima facie* identical in all relevant respects." Griffin Industries, Inc. v Irvin, 496 F. 3d 1189, 1204 (11th Cir. 2007). "Different treatment of dissimilarly situated persons does not violate the equal protection clause." E & T Realty v. Strickland, 830 F. 2d 1107, 1109 (11th Cir. 1987).

Under either the State or Federal Constitutions, Lee must establish evidence of a comparator whose situation is *prima facie* identical to Lee in all relevant aspects. Booker, Tubbs, and Lee are the only three applicants for approval of a Class 1 Lounge Retail Liquor License at 106 West Jefferson Street for whom evidence was presented to the Court. Hence, Lee's proposed comparators can be only Tubbs and Booker. Although the parties do not dispute that some sort of lounge or lounge and café has been in operation at that location intermittently for many years, no evidence was presented as to whether the same type of liquor retail license

was held by the former proprietors or whether there were other changed conditions.

Thus, assuming Booker, Tubbs, and Lee were *prima facie* identical, i.e., applying for approval of the same type of liquor license, same location with unchanged conditions, i.e., same parking ordinance in effect, substantially the same City officials in positions with authority to make final decisions on behalf of the City; the evidence shows that Booker's license was approved and Tubbs' license was not. Lee cannot chose between applicants and select only the one which was treated more favorably than he as his comparator. Therefore, the Court finds that Lee has failed to meet the burden on this element of the Equal Protection claim under either the state or federal constitution.

Lee must also show that there is no rational basis for the difference in treatment among Lee and his valid comparators. In that regard, "class of one" claims are difficult to establish "where governmental action is 'multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions over an extended period of time" or "where discretionary authority is exercised 'based on subjective, individualized determinations[.]'" Leib, 558 F.3d at 1307 (finding the Commission's determination regarding the "luxury" vehicle requirement involved "discretionary application of variegated set of factors, (e.g., aesthetic considerations, comparison with industry standard.")).

Assuming for purposes of argument that Lee had valid comparators, Lee failed to present sufficient evidence to establish that the City did not have a rational basis for its decision. Evidence of Lee's disputed past employment and labor history with Councilmember Harrison does not constitute sufficient evidence that Harrison's decision to deny approval of Lee's application was without a rational basis, especially in view of Harrison's testimony regarding his

concerns with parking, traffic, litter, trash, noise; Lee's management of other lounge and retail beer locations; Harrison's position that he would not vote to approve any lounge in the CBD; and his efforts to amend the Zoning Ordinance to eliminate lounges in the CBD. Since 2004, Councilmember Harrison made at least two attempts to amend the Zoning Ordinance to preclude all lounges in the CBD. At the January 5, 2009 meeting, during which Lee's request for 106 West Jefferson Street was not approved, Councilmember Harrison, with the second of Councilmember Taylor, and the unanimous approval of the Council began the public notice portion of the process to amend the Zoning Ordinance.

The evidence adduced at trial shows that the Councilmembers and Mayor voted on basis of "varied decisionmaking criteria", specifically, litter, trash, loud music, noise, vulgar language, fighting and arguing among people outside the lounge, injury to police officers responding to fights, parking, traffic congestion, and vehicles blocking the street, largely brought to the Mayor and Council by citizen complaints during the time that Booker owned or managed the lounge. Councilmembers Harrison and Taylor, and Mayor Long testified as to their long-held motivation to clean up the CBD. This testimony is especially convincing in light of the unrebutted testimony concerning the numerous problems that occurred at the location while Mamie Booker held the license. Accordingly, the Court finds that Lee has failed to present sufficient evidence to demonstrate that the City's reasons for not approving his application for 106 West Jefferson Street are without a rational basis.

III. Conclusion

For the reasons set forth herein, it is **ORDERED**, **ADJUDGED** and **DECREED** that **JUDGMENT** be entered in favor of the defendant City of Marion and against plaintiffs Lee's

Lounge, Inc. and Robert Lee.

A judgment consistent with the terms of this memorandum order shall issue contemporaneously herewith.

Each party shall bear their own costs in this litigation.

**DONE** and **ORDERED** this July 27, 2010.

**s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**